IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CV-101-FL

| | |
|---|---|
| ROD EDWIN MINTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Rod Edwin Mintz ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he was not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 20, 22). Both filed memoranda in support of their respective motions. (D.E. 21, 23). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. dated 30 Mar. 2015). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.  BACKGROUND

   A.  **Case History**

Plaintiff filed an application for DIB on 22 December 2010, alleging a disability onset date of 17 December 2010.[1] Transcript of Proceedings ("Tr.") 20. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 20. On 27

---

[1] Plaintiff filed an application for Supplemental Security Income benefits at the same time, but he apparently did not seek review of its denial on 11 January 2011. *See* Tr. 81-87.

September 2012, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 34-58. The ALJ issued a decision denying plaintiff's claim on 10 January 2013. Tr. 20-29. Plaintiff timely requested review by the Appeals Council. Tr. 16. On 21 June 2013, the Appeals Council denied the request for review. Tr. 10-15. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. The Appeals Council subsequently extended the time for plaintiff to seek judicial review. *See* Tr. 1-3. Plaintiff commenced this proceeding for judicial review on 20 May 2014, pursuant to 42 U.S.C. § 405(g). (*See* 1st *In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Denying 1st IFP Mot. (D.E. 4); 2d IFP Mot. (D.E. 5); 3d IFP Mot. (D.E. 6); Order Allowing 3d IFP Mot. (D.E. 7); Compl. (D.E. 8)).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," the temporal criterion being known as the duration requirement. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (defining duration requirement); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If

a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Claimant was 45 years old on the alleged onset date of disability and 47 years old on the date of the hearing. *See, e.g.*, Tr. 27 ¶ 7. He had at least a high school education and past relevant work as a pipefitter, millwright helper, and mechanic for a city. Tr. 27 ¶¶ 6, 8.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that claimant had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 15 ¶ 2. At step two, the ALJ found that claimant had the following medically determinable impairment that was severe within the meaning of the Regulations: chronic obstructive pulmonary disease ("COPD"). Tr. 22 ¶ 3. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 22 ¶ 4.

The ALJ next determined that claimant had the RFC to perform light work—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour workday with normal breaks.[2] Tr. 22 ¶ 5. He found, however, that claimant was subject to the following limitations:

---

[2] Title 20 C.F.R. § 404.1567(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

The claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He can occasionally stoop, crouch, and kneel, but must avoid moderate exposure to extreme temperatures of cold and heat. He must avoid exposure to irritants, fumes, and gases.

Tr. 22-23 ¶ 5.

Based on his determination of claimant's RFC, the ALJ found at step four that claimant was unable to perform his past relevant work. Tr. 27 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that claimant could perform, including jobs in the occupations of hand packer, produce inspector, and garment folder. Tr. 28 ¶ 10. The ALJ accordingly concluded that claimant had not been under a disability at any time from the date of alleged onset of disability, 17 December 2010, through the date of the decision, 10 January 2013 ("relevant period"). Tr. 28 ¶ 11.

### D. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence

---

Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 24 April 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. DISCUSSION

Plaintiff contends that the ALJ's decision should be reversed and this case should be remanded for a new hearing on the grounds that the ALJ erred by not discussing or even

considering his neck pain (*i.e.*, cervicalgia), headaches, and anxiety at step two of the sequential analysis. The court finds no error.

> **A.   The ALJ's Consideration of Plaintiff's Neck Pain, Headaches, and Anxiety at Step Two and Thereafter**

It is true that the ALJ did not discuss plaintiff's neck pain, headaches, or anxiety at step two. But plaintiff has not established that the ALJ failed to consider them, either at step two or the subsequent steps of the sequential analysis.

The ALJ repeatedly represents that he considered all evidence of record in reaching his decision. For example, he states at the outset of his decision that he concluded plaintiff was not disabled "[a]fter careful consideration of all the evidence." Tr. 20. He also stated that he was making his findings "[a]fter careful consideration of the entire record." Tr. 22. He prefaced his RFC determination by noting that he reached it "[a]fter careful consideration of the entire record." Tr. 23 ¶ 5. He had previously noted that in making his RFC determination he had to consider "all of the claimant's impairments, including impairments that are not severe." Tr. 21. Similarly, he stated that he determined plaintiff's allegations were not fully credible "[a]fter careful consideration of the evidence." Tr. 23 ¶ 5. Moreover, in explaining his RFC determination, the ALJ discusses all the exhibits containing medical records during the relevant period that address plaintiff's headaches or anxiety. *See* Ex. 3F (addressing anxiety at Tr. 268; cited at Tr. 23-24 ¶ 5); Ex. 6F (addressing headaches and anxiety at Tr. 311; cited at Tr. 24 ¶ 5; 26 ¶ 5); Ex. 8F (addressing headaches at Tr. 336; cited at Tr. 24 ¶ 5; 25 ¶ 5); Ex. 10F (addressing anxiety at Tr. 363, 364, 365; cited at Tr. 24 ¶ 5; 25 ¶ 5; 26 ¶ 5); Ex. 11F (addressing headaches at Tr. 370, 372, and anxiety and headaches at Tr. 373-74; cited at Tr. 25 ¶ 5; 26 ¶ 5); Ex. 12F (addressing headaches and anxiety at Tr. 378; cited at Tr. 24 ¶ 5; 27 ¶ 5); Ex. 15F (addressing

headaches and anxiety at Tr. 387; cited at Tr. 25 ¶ 5; 26 ¶ 5). The ALJ also expressly mentions plaintiff's headaches in his explanation of his RFC determination. *See* Tr. 24 ¶ 5; 25 ¶ 5.

The ALJ does not discuss the one exhibit—Exhibit 1F—containing records addressing plaintiff's neck pain. But they predate by over a year plaintiff's alleged onset of disability. *See* Ex. 1F at Tr. 228 (24 Aug. 2009); Tr. 235-38 (3 Sept. 2009). To be relevant, evidence of a condition must, of course, relate to the period of alleged disability. *See*, *e.g.*, *Edwards v. Astrue*, No. 7:07CV48, 2008 WL 474128, at *9 (W.D. Va. 20 Feb.2008). Plaintiff has not made this showing with respect to his neck pain, as the discussion below indicates.

Lastly, in the administrative proceedings, plaintiff devoted scant attention to neck pain, headaches, and anxiety as a basis for his alleged disability. In addition, the medical evidence of these conditions is relatively sparse. Both considerations, which are discussed below, lend justification to the ALJ's election not to discuss these conditions in his decision more extensively than he did.

The court concludes that the ALJ did consider plaintiff's neck pain, headaches, and anxiety at step two of the sequential analysis and determined, albeit not expressly, that they were not severe impairments. The court further concludes that the ALJ also considered these conditions at the subsequent steps of the sequential analysis.

    **B.    Substantial Evidence Supports the ALJ's Severity Determination regarding Plaintiff's Neck Pain, Headaches, and Anxiety**

An impairment is severe if it imposes more than a minimal limitation on the ability to do basic work activities. *See* Soc. Sec. R. 85–28, 1985 WL 56856, at *3 (1 Jan. 1985); *see also* 20 C.F.R. § 404.1520(c) (providing that an impairment is severe only if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities"). At step two, the burden rests on the claimant to show his alleged conditions satisfy this standard as well as qualifying as

impairments, including satisfying the durational requirement. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). The ALJ's implicit determination at step two that plaintiff's neck pain, headaches, and anxiety are not severe impairments is supported by substantial evidence.

       **1.**    **Neck Pain**

As noted, the only medical records reflecting the alleged neck impairment predate the alleged onset of disability. Medical records during the relevant period fail to show findings of abnormalities in plaintiff's neck or complaints by him of neck pain. For example, an examination of plaintiff's neck on 15 January 2011, by treating physician Mark Hanna, M.D., was "normal" and plaintiff's neck "supple." Tr. 267. Plaintiff was also found to have no motor or sensory deficits. Tr. 267. There were no complaints of neck pain. *See* Tr. 266-68.

An examination of plaintiff on 24 February 2011 by consulting physician Ayman Gebrail, M.D. produced similar findings. *See* Tr. 310-13. Plaintiff's neck was found to be supple with a palpable thyroid but no lymphadenopathy; cranial nerves II through XII, coordination, and strength were found to be grossly intact; and the range of motion of the cervical spine was found to be normal. Tr. 311, 312, 314. No complaints of neck pain were noted. *See* Tr. 310-13. Dr. Gebrail's reexamination of plaintiff on 23 October 2012 produced comparable findings, again with no complaints of neck pain. *See* Tr. 386-89. The record is replete with other medical reports containing similarly benign findings and lacking complaints by plaintiff regarding his neck. *See*, *e.g.*, Tr. 251 (normal inspection; 17 Dec. 2010); 299 (normal inspection; 15 Jan. 2011); 300 (no neck pain noted; 22 Jan. 2011); 319 (no neck pain noted; 22 Mar. 2011); 337 (normal inspection; 12 May 2011); Tr. 371 (neck supple without lymphadenopathy or bruits; 2 Nov. 2011).

Even in the period prior to the alleged onset of disability the record does not establish unequivocally that plaintiff's alleged neck condition was a severe impairment. Most notably, the neurologist he saw in September 2009, Mark Pithan, M.D., reported that his neurological examination of plaintiff was normal, although he had "severe tenderness on the cervical paraspinals as well as under trapezius muscles." Tr. 237-38. Dr. Pithan prescribed gabapentin, physical therapy, and electromyography ("EMG") testing. Tr. 238. The record does not show that plaintiff ever took physical therapy, underwent EMG testing, or returned to Dr. Pithan.[3]

Plaintiff points to no evidence showing that his neck pain restricted his ability to perform basic work activities either before or after the alleged onset of disability. Moreover, in the administrative proceedings, plaintiff did not claim that neck problems limited his ability to work.

For example, in his initial disability report, dated 4 January 2011, following his protective filing, plaintiff lists COPD, bronchitis, and chest wall pain as all the physical or mental conditions that limited his ability to work. Tr. 175. In a 17 May 2011 disability report, he stated that he had no new physical or mental limitations. Tr. 192. The notice of both the initial denial and denial upon reconsideration of plaintiff's claim list COPD, bronchitis, and chest wall pain as the conditions he claimed were disabling. Tr. 88, 96; *see also* Tr. 198 (N.C. Dep't of Health and Human Servs. form for plaintiff dated 24 May 2011 not including neck pain, headaches, or anxiety among his allegedly disabling conditions). There was no mention of neck pain at the administrative hearing. Not even his appeal of the ALJ's decision to the Appeals Council cites neck pain as a ground for his alleged disability. *See* Tr. 226. The absence of any prior

---

[3] Dr. Pithan found that plaintiff had cervicogenic headaches (*i.e.*, headaches resulting from referred pain from the neck) (Tr. 236, 238), but no such diagnosis was made during the relevant period.

contention by plaintiff that his alleged neck condition was disabling tends to substantiate the determination by the ALJ that it is not a severe impairment.[4]

> ### 2. Headaches

As to plaintiff's headaches, the medical evidence relating to them is episodic and inconsistent in nature. Occasions during the relevant period on which plaintiff reported headaches included his 24 February 2011 examination by consulting physician Dr. Gebrail. At that time, plaintiff reported only "occasional" headaches. Tr. 311.

About three months later, in an emergency room visit with Ziaollah Hashemi, M.D. on 12 May 2011, plaintiff reported a headache, although he also had a low-grade measured temperature and chills, among other symptoms. Tr. 336. His chief complaint was chest pain. Tr. 336.

About a month later, during a 17 June 2011 visit to pulmonologist Carter J. H. Childs, M.D. for COPD, plaintiff reported "frequent headaches," but as part of his past medical history. Tr. 378. There is no finding that he had a headache at the time of the visit.

About five months later, on 2 November 2011, plaintiff went to the emergency room primarily for chest pain and related symptoms. Tr. 373. He was there secondarily for chronic daily headaches. Tr. 373. He was taking simply Tylenol for the headaches. Tr. 373. A computed tomography ("CT") scan of his head was normal. Tr. 372. The treating physician, Rebecca H. Brown, M.D., noted that she suspected "his headaches are multifactorial including the fact that he continues to smoke despite having [COPD]." Tr. 372. Plaintiff had, of course, been told repeatedly by his physicians to stop smoking. *See*, *e.g.*, Tr. 266, 301, 345, 361, 363,

---

[4] Although not addressed by the Commissioner, plaintiff's lack of focus in the administrative proceedings on his neck pain—along with his headaches and anxiety—as bases for his disability raises the potential issue whether he waived his right to claim them as severe impairments in this judicial review. *See*, *e.g.*, *Drake v. Colvin*, No. 1:13cv694, 2014 WL 4659487, at *4-5 (M.D.N.C. 17 Sept. 2014); *Spuhler v. Colvin*, No. 2:13-cv-12272, 2014 WL 4855743, at *21-23 (E.D. Mich. 17 June 2014), *rep. and recomm. adopted in part by* 2014 WL 4856153 (30 Sept. 2014). The court declines to resolve this issue since this appeal is readily resolved on other grounds, as set out herein.

373, 379. A claimant's failure to comply with prescribed treatment without good reason precludes the claimant from being found disabled. *See* 20 C.F.R. § 404.1530(b); *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir. 1988) ("Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege—but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.").

Almost a year later, on 23 October 2012 during another consultative examination by Dr. Gebrail, plaintiff again reported that his past medical history included headaches. Tr. 387. He was also found positive for a headache at that time and reported taking medication for migraine headache relief. Tr. 387.

The foregoing records are accompanied by numerous other medical records that either lack any mention of headaches or affirmatively find that there was none. *See*, *e.g.*, Tr. 251 (17 Dec. 2010; no mention of headaches); 266 (15 Jan. 2011; "no headaches"); 359 (17 May 2011; "Negative for . . . headaches . . . ."); 364 (10 June 2011; no mention of headaches); 382 (16 Mar. 2012; no mention of headaches). Further, the records that do address headaches lack any findings or complaints by plaintiff that his headaches imposed any work-related functional limitations on him. Plaintiff apparently did not seek treatment from a neurologist for his headaches during the relevant period, and the medications he took for headaches were apparently limited to over-the-counter products. *See* Tr. 221, 373.

Lastly, similarly as with plaintiff's alleged neck pain, he did not include headaches as a basis for disability in his application for DIB. *See* Tr. 88, 96, 175, 198. At the administrative hearing, the only reference to headaches was their inclusion by plaintiff's attorney in a list of

seven medical conditions he suggested in his closing argument prevented plaintiff from working. Tr. 55.[5] There was no mention of headaches in the appeal to the Appeals Council. *See* Tr. 226. Plaintiff's lack of focus on headaches as a basis for disability during the administrative proceedings tends further to discredit his current claim that they limited his ability to work.

### 3. Anxiety

The medical evidence regarding plaintiff's anxiety is also episodic and inconsistent in nature. On 17 December 2010, plaintiff's mood and affect were found to be normal by treating physician John Tseng, M.D. Tr. 251. About one month later, on 15 January 2011, he went to the emergency room complaining of chest pain and shortness of breath. Tr. 266. The clinical impressions of Dr. Hanna were pneumonia, acute exacerbation of COPD, chest wall pain, and anxiety reaction, along with tobacco abuse. Tr. 268. Thus, the anxiety was tied to plaintiff's pulmonary problems. He was not prescribed any medication specifically for the anxiety. *See* Tr. 268.

During his 24 February 2011 visit with consulting physician Dr. Gebrail, plaintiff reported anxiety attack as part of his surgical and hospital history, perhaps alluding to the anxiety reaction in January 2011. Tr. 311. No current anxiety was reported.

Almost three months later, on 13 May 2011, when plaintiff was admitted to the hospital for chest pain, bronchopneumonia, and COPD exacerbation, the psychological assessment by the treating physician, Keith Reschly, M.D., found: "Affect appropriate. Mood neutral but anxious." Tr. 344. In the context of a hospital visit, such anxiety could arguably be interpreted

---

[5] Plaintiff's counsel stated:

> I don't think this is a situation where he doesn't want to work, it's just a situation where he flat out can't. The list of diseases I got a look at, the hypertension, chronic headaches, COPD, emphysema, anxiety disorder, fatty liver, ulcer in the stomach, he has a history of pleurisy.

Tr. 55.

13

Case 7:14-cv-00101-FL   Document 25   Filed 04/24/15   Page 13 of 17

as unremarkable. Indeed, anxiety was not included on the "Problem List" at the end of the report, nor were any medications prescribed for it. *See* Tr. 344-45.

At a cardiology visit four days later, on 17 May 2011, it was noted by the examining physician's assistant that "[h]e denies [chest pain] associated anxiety." Tr. 359. The physician's assistant found that plaintiff was "[n]egative for anxiety" and had "appropriate affect and demeanor." Tr. 359, 361.

Nine days later, on 26 May 2011, plaintiff was again seen for breathing and chest pain problems. Tr. 363. The treating physician, Domenic A. Palagruto, D.O., noted anxiety and depression as a possible factor in plaintiff's symptoms and prescribed Zoloft. Tr. 363. However, on 10 June 2011, less than two weeks later, plaintiff reported at a visit with treating physician Aaron Brown, D.O. that he had stopped taking the Zoloft on 7 June 2011, use of which plaintiff related to sweating and shaking he had been experiencing. Tr. 364. Dr. Brown found plaintiff to have flat affect at that visit, but prescribed no medication for it. *See* Tr. 364.

Moreover, Dr. Brown, after noting plaintiff's having been prescribed Zoloft, stated that plaintiff's "Dad passed away in 3/2011." Tr. 368. This record could reasonably be interpreted as suggesting that the death of plaintiff's father was contributing to his mental status. In any event, treating pulmonologist Dr. Childs noted in his examination of plaintiff a week later, on 17 June 2011, that plaintiff had "normal mood and affect," while noting his past medical history included anxiety. Tr. 378, 379.

About five months later, during plaintiff's hospital visit from 2 to 3 November 2011 for shortness of breath and other problems, Dr. Brown found that plaintiff had a "somewhat flat affect," but that otherwise he was "appropriate." Tr. 371. He was diagnosed with anxiety disorder and prescribed Ativan. Tr. 373, 374.

Nevertheless, in an examination some four months later, on 16 March 2012, plaintiff was found to have normal mood and affect. Tr. 382. Lastly, during the consultative examination by Dr. Gebrail on 23 October 2012, plaintiff did not report taking any medications for anxiety. Tr. 387. Although Dr. Gebrail listed anxiety as part of plaintiff's past medical history, he made no finding that plaintiff was anxious that day, noting rather that he "answers questions appropriately." Tr. 388.

As can be seen, plaintiff appears to have been on medication for anxiety for only brief periods, after which his mood and affect were found to be normal. In addition, his anxiety could reasonably be related to exacerbation of his pulmonary problems and his father's death. Plaintiff did not seek treatment from a mental health professional during the relevant period. The medical records contain no findings that the anxiety imposed any work-related limitations on plaintiff. In addition, similarly as with his neck pain and headaches, he paid scant attention to anxiety in the administrative proceedings. He did not claim it as a basis for disability in his application for DIB. *See* Tr. 88, 96, 175, 192, 198. At the administrative hearing, plaintiff's testimony regarding anxiety was limited to his stating that he had an anxiety attack two days before the hearing, for which he went to the emergency room (Tr. 42), and his attorney simply included anxiety in the list of seven medical conditions he suggested in his closing argument prevented plaintiff from working (Tr. 55). Plaintiff did not include anxiety in his appeal to the Appeals Council. *See* Tr. 226.

### C. Any Error by the ALJ Was Harmless

Even if the ALJ were deemed to have erred in not finding plaintiff's neck pain, headaches, and anxiety to be severe impairments, the court concludes, in the alternative, that any such error was harmless. The failure to find an alleged impairment severe at step two of the

sequential analysis is not reversible error where the ALJ considers the alleged impairment at subsequent steps of the analysis. *See*, *e.g.*, *Atkinson v. Astrue*, No. 5:10-CV-298-FL, 2011 WL 3664346, at *8 (20 July 2011) (citing *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. 23 Feb. 2009)), *rep. & recomm. adopted by* 2011 WL 3664858 (E.D.N.C. 18 Aug. 2011). As discussed, the record shows that the ALJ did consider plaintiff's neck pain, headaches, and anxiety after step two.

Moreover, given the relative weakness of the evidence regarding these conditions, plaintiff has not shown that determination of them to be severe impairments would have altered the outcome of the case. *See Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir.2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n. 7, 7 (M.D.N.C. 14 Aug. 2013). The error that plaintiff alleges, if deemed to have occurred, is harmless in this additional sense.

### III. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 22) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 20) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 8 May 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after filing of the objections on the responding party.

This, the 24th day of April 2015.

James E. Gates
United States Magistrate Judge